Dear Ms. Jackson:
We have received your request for reconsideration of Attorney General Opinion Number 94-219, and for an opinion as to the status and effect of Harahan Ordinance Number 1059, adopted in January of 1994. Said ordinance ratified the compensation being paid by the City of Harahan to its elected officials at that time. Your request letter goes into great detail explaining the payments to the board of aldermen regarding their salary, additional compensation and expenses, and includes documentation. We will reiterate most of the facts presented in your letter for the readers benefit.
With regard to salary you point out that the revised statutes pertaining to this matter, specifically R.S. 33:404.1 and 405(G), do not refer to "salary" but refer to "compensation". You argue that "compensation" includes more than "salary" and refer to the definition of "compensation" in Black's LawDictionary, 283 (6th ed. 1990), which defines compensation as:
 "[r]emuneration for services rendered, whether in salary, fees or commissions."
We agree with your interpretation that compensation includes more than salary, as far as such compensation is for services rendered. However, we do not find that our reference to "salary" instead of "compensation" in our earlier opinion renders it invalid.
The question in Opinion Number 94-219 was whether the inclusion of "expense" checks, issued without benefit of any receipts or vouchers, into the "salary" checks of the aldermen was an unacceptable practice according to LSA-R.S. 33:404.1 and 405(G). Our opinion was based on the facts presented by the requester. The facts presented in your letter are considerably different than the facts we received with regard to Opinion Number 94-219.
Your letter states that the "expense" checks described by the requester in Opinion Number 94-219 originated in the 1968 budget ordinance under the heading "Allowances to city officials". You have provided our office with an affidavit from the current city clerk, Barbara Butera, who has been employed by the Harahan City Administration since 1966, and as clerk since 1973, who attests that the account labeled "Allowances to city officials", and later labeled "Officials Expense Allowance", was never used for expenses and has always been considered and administered asadditional compensation to the elected officials of Harahan.
You state that the line item account labeled "Ads, conventions, dues, etc." has been the source for reimbursement payments for elected officials for travel expenses, conventions, memberships in municipal associations, etc., and that vouchers have been required for payment or reimbursement for such expenses.
While you can find no minutes to document the reason for the account "Allowances to city officials", you summarize that the account was probably set up for the payment of additional compensation to aldermen for the attendance of special meetings, under R.S. 33:405(G), before the amendment by Act 890 of 1985. Act 890 of 1985 deleted the language providing for additional compensation for the attendance of special meetings; however, the city has continued to pay the additional compensation since then. You suggest that the line item labeled "Allowances to city officials" could be characterized as a set amount of additional compensation paid on a regular basis to elected public officials for services despite the number of special meetings or other services required of them. Further, you point out that increases in the amounts paid from this account were prior to the prohibition that became effective on January 1, 1986 and therefore, are not subject to said prohibition. Additionally, you state that the additional compensation paid from this account, "Allowances to city officials" and later "Officials Expense Allowance", was never intended to be nor treated as a vouchered expense account, and IRS 1099 forms have been issued by the City to the elected public officials showing the payment of this additional compensation, which can be documented as far back as 1980.
Your letter states that as of January 1992, the city began withholding social security and Medicare deductions from this additional compensation, upon the advice of the Social Security Division of the Louisiana Department of the Treasury, and you refer to Attorney General Opinion 92-857. Additionally, the city began combining the additional compensation with the salary of the elected public officials in January of 1992 to simplify the accounting procedure for convenience in the withholding of taxes, in which it is your position that said action does not constitute an increase in compensation. However, your Exhibit 5, which is a memo from the City Clerk, Ms. Butera, dated January 30, 1992 states:
 "Effective with this check, your expense allowance
has been included with your salary for the purpose of making FICA and medicare deductions.
 This is being done on the advice of a representative of the Social Security Division of the Louisiana Department of the Treasury."
* * *
(Emphasis added.)
The language used by the city clerk, "expense allowance", is in contradiction to your position that said monies were not for "expenses", but for "compensation".
Your letter states that the combination in 1992 of the "salary" amounts and "additional allowance" amounts into one compensation check for the Harahan Aldermen was not an increase in the amount of compensation paid to the aldermen and that there has been no increase in the amount of compensation paid to the aldermen since 1985. Further, you state that the accounting records of the city show that in each year from 1985 through 1991, via two separate monthly checks, each alderman was paid a total of $4,092 from the account labeled "salaries", for which an IRS Form W-2 was issued, plus a total of $2,028 from the account labeled "allowances", for which an IRS Form 1099 was issued, for a total amount of $6,120 in "compensation". In 1992 and 1993, these amounts were combined, FICA and Medicare were withheld and only an IRS W-2 Form in the total amount of $6,120 was issued. In 1994, the "allowances" account was discontinued and the aldermen were paid the same total amount ($6,120) from the "salary" account in a single monthly check and FICA and Medicare payments were withheld on the total amount.
Your documents show that in 1985 an alderman was issued an IRS 1099 Form for the payment of $2,028.00 under "nonemployee compensation", with no taxes withheld. In 1988, an IRS W-2 Wage and Tax Statement was issued to an alderman showing "wages, tips, other compensation" as $4,092.00, with social security tax withheld and state income tax withheld. In 1988, an IRS 1099 Form was issued to the same alderman showing "royalties" as $2,028.00, with no taxes withheld. And the last document, a 1992 W-2 Wage and Tax Statement, shows a total of $6,120 as "wages, tips, other compensation", with taxes withheld for social security and Medicare.
The writer has a limited knowledge of the tax code, but in referring to the Instructions to the Federal Tax Forms learned that all wages and "other compensation" are to be reported on a W-2 Form and not a 1099 Form. "Other compensation" is defined in the instructions as "[a]mounts includible in gross income but not subject to income tax withholding." Circular E,Employer's Tax Guide, IRS, Chapter III, 2. Reporting to Employees on Form W-2. The instructions further provide that if you have a payroll system that makes it difficult to combine other compensation with wages and tips, you may file two Forms W-2; one showing wages and tips, the other showing
The questions that are unanswered in this matter are (1) under what authority have the aldermen been receiving "additional compensation" in the amount of $2,028.00, (2) whether the payment of the "additional compensation" was an authorized increase in the aldermen's salary, and (3) whether the board can now ratify the payment of the "additional compensation" by ordinance in 1994?
As we opined in 94-219, the law clearly sets forth that any salary increases are valid only if approved by the board of aldermen in ordinance form and only if the increases do not become effective during the term of office in which the increase is approved, nor made in the last six months of the term of office. Additionally, we opined in 94-219 and 92-716 that if expense reimbursements are not adequately documented, and are not treated as additional compensation by withholding taxes, the allowances may be in violation of La. Const. (1974) Art. VII, Sec. 14. We find no reason to change our earlier opinion, as all of the facts and documentation you provided prove only two points: (1) that additional monies were received by the aldermen from 1968 to 1992, for which taxes were not withheld, and (2) that compensation of aldermen increased for tax purposes in 1992 from $4,092.00 to $6,120.00.
With regard to the status and effect of Harahan Ordinance Number 1059, we are of the opinion that you may not adopt an ordinance in 1994 that ratifies past compensation. According toRobert's Rules of Order, Newly Revised, 9th Edition (1990), at p. 122, an assembly can ratify only such actions as it would have had the right to authorize in advance, and cannot ratify anything done in violation of national, state, or local law. LSA-R.S. 33:404.1 and 405(G) clearly establish that increases in compensation are to apply prospectively and therefore, it is our opinion that since the board may not increase their salary during their term in office, they may not ratify such an action.
If you have any further questions regarding this matter, please contact our office.
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: _________________________________ ANGIE ROGERS LaPLACE Assistant Attorney General
RPI/ARL/pb
Ms. Patricia N. Jackson City Attorney City of Harahan 6437 Jefferson Highway Harahan, Louisiana 70123
DATE RECEIVED:
DATE RELEASED:
ANGIE ROGERS LAPLACE ASSISTANT ATTORNEY GENERAL